UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALYSHA SMITH for A.W.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-5586-ILRL-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | |

**FINDINGS AND RECOMMENDATION**

Plaintiff, A. W.[1] ("AW"), by and through her next friend and mother, Alysha Smith ("Ms. Smith"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1382(c).

**PROCEDURAL HISTORY**

On April 12, 2005, an application for supplemental security income was filed. R. 25.[2] Ms. Smith contended that AW became disabled on April 4, 2005. R. 53. On May 12, 2005, a disability examiner determined that AW had a severe impairment, asthma, but it did not meet or medically equal the listing requirement. R. 42. On that date, Ms. Smith was notified that AW was not eligible for benefits. R. 53-55. On July 12, 2006, there was a hearing before an Administrative Law Judge

---

[1] Pursuant to a directive from the Judicial Conference and an order from the Chief Judge of this court, minors may only be referred to by their initials.

[2] Applications for benefits also were filed on August 18, 2002 and April 5, 2004. R. 69-75.

("ALJ").  Ms. Smith testified.  She did not have assistance from counsel.  R. 344-53.  On September 15, 2006, the ALJ issued an unfavorable decision.  R. 22-31.  On July 20, 2007, the Appeals Council denied Ms. Smith's request for review.  R. 4-6.

On September 17, 2007, Ms. Smith filed a complaint on behalf of AW.  Rec. doc. 1.  The parties filed cross-motions for summary judgment.  Rec. docs. 11 and 14.  AW is represented by counsel in federal court.

### STATEMENT OF ISSUE

Did the ALJ err in failing to find that AW's condition met, medically equaled and/or functionally equaled a Listing under Section 103.03B-Asthma?

### ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. AW was born in 2002.  She was an older infant on April 12, 2005, the date the application was filed, and was a preschooler at the time of the decision (20 CFR 416.926a(g)(2)).

2. AW has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).

3. AW has the following severe impairments: heart disease and asthma (Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985); SSR 96-3p; and 20 CFR 416.924(c)).

4. AW does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. AW does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

6. AW has not been disabled, as defined in the Social Security Act, since April 12, 2005, the date the application was filed (20 CFR 416.924(a)).

R. 28-31.

## ANALYSIS

    a.    <u>Standards of Review</u>.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Boyd v. Apfel</u>, 239 F.3d 698, 704 (5th Cir. 2001); <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); <u>Newton</u>, 209 F.3d at 452. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). This court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. <u>Id</u>.; <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See <u>Arkansas v. Oklahoma</u>, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1022 (5th Cir. 1990); <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995).

The issue is whether the claimant is "disabled" under the definition found in 42 U.S.C. § 1382c(a)(3)(C) which states:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Id. The regulations thereunder mandate the following three step analysis:

> We follow a set order to determine whether you are disabled. [Step One] If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. [Step Two] If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. [Step Three] If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a). If a claimant's impairment does not meet or medically equal in severity a listed impairment, the Commissioner considers how the child functions in terms of six domains.[3] There will be a finding of functional equivalence if there are marked limitations in two of the domains, or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d).

b.      Testimony before the ALJ.

AW was less than four years old at the time of the hearing. R. 347. Ms. Smith lived alone with her two children. R. 352. AW attended a Head Start school. R. 349-50. She had missed twenty-three days at school. R. 351.

AW was diagnosed with chronic asthma. R. 348. She had breathing problems. R. 347. The

---

[3] The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1).

last time she was hospitalized was when she was two years old. R. 348. She had a nebulizer which was used twice a day before and after school. R. 348-350. At night she took Singulair and Adarex. R. 348. She slept a lot. R. 351.

She was born with a heart disease which was not discovered until she was one year old. R. 349. She had fever often. R. 349. AW's sibling also had chronic asthma. R. 350.

c.     Medical Records.

### 2002

On August 1, 2002, AW was seen at Chabert Medical Center ("Chabert") for diaper rash. R. 177-78. On August 2, 2002, she returned to Chabert with breathing problems. Her formula was changed. R. 175. From September 13-18, 2002, AW was admitted to Chabert for salmonella gastroenteritis. She was discharged on Amoxil. R. 173-74. From September 22-24, 2002, she was admitted to Chabert for reactive airway disease, salmonella enteritis and upper respiratory infection. R. 169-70.

### 2003

On January 12, 2003, AW seen at Thibodaux Regional Medical Center ("TRMC"). Her condition was stable on her arrival. Ms. Smith reported that she had a cough and congestion. She was discharged with medication. R. 217. On March 13, 2003, x-rays revealed lung markings which may have been chronic. There was a moderate amount of fecal residue scattered throughout the colon. R. 165. On May 15, 2003, AW was allowed to drink cow's milk. R. 164. On June 9, 2003, AW was seen at TRMC's emergency room for constipation. R. 159. On June 10, 2003, she returned to Chabert for a runny nose and vomiting. R. 158.

From July 14-16, 2003, AW was admitted to Chabert for Kawasaki's disease with small

pericardial effusion. R. 135-57. AW came to the emergency room with high fever. After five days of fever and testing, she was sent to Ochsner Clinic Foundation ("Ochsner"). R. 137-38. From July 16-21, 2003 she was hospitalized at Ochsner for mucocutan syndrome and pericardial disease. R. 129. She was discharged on aspirin. Her disposition at discharge was good. R. 191-93. On July 28, 2003, AW was seen at Chabert for a follow-up for Kawasaki's disease. R. 123.

On August 14, 2003, Ochsner reported AW was doing well. There were no symptoms of significant cardiovascular compromise. An echocardiogram was normal. There was no evidence of coronary artery involvement. She was to take aspirin and return in six to eight weeks for an EKG and echocardiogram. R. 183-84.

On September 10, 2003, AW was seen at Chabert. Ms. Smith reported that she cried when she walked. She was diagnosed with intermittent joint pain. R. 234. On September 15, 2003, she returned to Chabert. R. 233. On October 7, 2003, she was seen at Chabert. Ms. Smith reported that she grabbed at her chest and did not walk on some days. R. 231.

On October 9, 2003, AW was seen by Andres G. Pedroza, M.D., a pediatrician, at the request of the Commissioner. AW had a history of bronchial asthma with recurrent episodes about once a week. She used Albuterol by home nebulizer. She had a history of Kawasaki's disease. Although Ms. Smith reported some walking difficulties, AW's gait was normal for her age and no edema was noticed. R. 201-03.

On November 19, 2003, AW was seen at Chabert. Ms. Smith reported she had fever, coughing and vomiting. R. 228. On December 10, 2003, she returned to Chabert. She had a cough, congestion, diaper rash and was pulling at her ears. R. 225.

2004

On February 2, 2004, AW was seen at Chabert for coughing, nasal congestion and diarrhea. R. 223. On February 9, 2004, she returned for a check-up. R. 222. On February 19, 2004, AW was seen at TRMC. She was in fair condition at her arrival. Ms. Smith reported that AW had the symptoms for two days before going to the emergency room. The diagnosis was upper respiratory infection. She was discharged with medication. She was told to see her personal physician in seven to ten days. R. 213.

On April 2, 2004, AW was seen at Chabert Hospital. Ms. Smith reported that AW had two asthma attacks the night before. R. 219. On April 30, 2004, she returned to Chabert. Ms. Smith reported coughing and congestion. R. 264.

On May 3, 2004, a childhood disability examination form was completed. Although AW's impairments were severe, they did not meet the listing requirements. R. 265-70.

On July 6, 2004, AW was seen at Chabert. Ms. Smith reported congestion, coughing and ear infections. R. 263. On November 22, 2004, she returned to Chabert complaining of congestion and coughing. R. 259.

2005

On January 12, 2005, AW was seen at TRMC for crying and pain in the abdomen. Her diet was changed. R. 246. AW seen at Chabert on the following dates: January 25, 2005-Ms. Smith reported fever, coughing and congestion (R. 258); February 28, 2005-for asthma and a check-up (R. 257); April 1, 2005-for coughing and congestion (R. 255); and April 18, 2005-with complaints of coughing and asthma (R. 254).

On May 11, 2005, a childhood disability examination form was completed. Although AW's

impairments were severe, they did not meet the listing requirements. R. 271-76.

AW seen at Chabert on the following dates: May 16, 2005-Ms. Smith reported that she had fever, coughing and headaches (R. 302); May 17, 2005-Ms. Smith reported that AW was wheezing (R. 298-300); May 25, 2005-for a follow-up;(R. 296-97); June 14, 2005-for a check-up (R. 294-95); July 27, 2005-for a return visit (R. 292-93); October 1, 2005-Ms. Smith reported that AW was congested, she was vomiting; (R. 288-291); October 3, 2005-Ms. Smith reported AW was coughing a lot at night and had congestion (R. 286); October 11, 2005-for asthma (R. 285); November 2, 2005-for asthma (R. 282); November 18, 2005-for an asthma flare-up at school (R. 281-84); November 22, 2005-for asthma (R. 280); and November 30, 2005-for a follow-up on asthma and refills on her medication (R. 279).

## 2006

On January 4, 2006, AW was seen at Chabert for a refill of her medication. R. 336. On January 22, 2006, AW was seen at TRMC for a cough. R. 317–18. On January 25, 2006, she returned to Chabert. Ms. Smith reported that AW had been coughing since she was seen at TRMC on January 22, 2006. R. 335. A chest x-ray at Chabert was normal. R. 334. On February 17, 2006, a dentist at TRMC performed restorative dentistry on AW for dental decay. R. 315. On April 27, 2006, AW was seen at TRMC for fever. Ms. Smith reported that the fever had persisted for two days. R. 311–14. On May 12, 2006, AW was seen at Chabert with a complaint of gagging and a report that she urinated on herself. R. 329. X-rays indicated conditions which may have been caused by chronic lung changes such as asthma. R. 328.

AW was seen at Chabert on the following dates: May 16, 2006-for a return visit for her bronchitis (R. 327); May 25, 2006-for febrile illness with rash and body aches which were

improving (R. 340-43); June 23, 2006-for a check-up (R. 326); July 11, 2006-for a check-up (R. 325); and July 19, 2006-for a headache (R. 323-24).

d.      Analysis.

Issue.  Did the ALJ err in failing to find that AW's condition met, medically equaled and/or functionally equaled a Listing under Section 103.03B?

The listing requirement for asthma attacks for a child turns on the frequency of the attacks and the nature of the attacks. Listing 103.03B requires:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. part 404, subpart P, app. 1. section 103.03B. The Listing incorporates the definition of an asthma attack found in Section 3.00C which states:

> Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

20 C.F.R. part 404, subpart P, app. 1. section 3.00C.

"For a claimant to demonstrate that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990) (emphasis in original). "The claimant must provide medical findings that support each of the criteria for the equivalence impairment determination." Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990). In childhood disability cases, medical equivalency exists if the child's impairment is at least equal in severity and duration to the medical criteria of the listed impairment being considered. See

20 C.F.R. §416.926(a)("[y]our impairment(s) is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment.").

AW argues that the following visits satisfy Listing 103.03B: (1) May 16, 2005; (2) May 17, 2005; (3) June 14, 2005; (4) October 1, 2005; (5) October 11, 2005; (6) November 2, 2005; (7) November 18, 2005; and (8) November 22, 2005. The Commissioner responds that they do not satisfy the requirements for frequency or seriousness. The ALJ found that AW did not meet the listing requirements. R. 28. The decision does not discuss these visits.

1.  May 16, 2005.

On this date, AW seen at Chabert. The visit is recorded on a "pediatric progress" form. It indicates that AW (with Ms. Smith) was a walk-in. Ms. Smith reported that AW was experiencing fever, coughing and headaches. In connection with the physical assessment, AW's lungs were found to be clear. The primary diagnosis was sinusitis. The secondary diagnosis was asthma. The notes reveal that Ms. Smith was told to continue AW on Xoprene, drink fluids, continue taking Tylenol and start Pulmicort. She was to return on May 25, 2005. The note indicates that she was discharged at 11:45 a.m. AW contends she was hospitalized on this date. The one page form does not demonstrate that she was admitted to the hospital or that AW was subjected to intensive treatment. Asthma was the secondary diagnosis. The physical assessment indicated that her lungs were clear. The May 16, 2005 visit does not meet the definition of an asthma attack found in Section 3.00C.

2.  May 17, 2005.

The day after the visit to Chabert, Ms. Smith brought AW to the Chabert emergency room at 8:41 p.m. Ms. Smith reported that AW wheezed all day and her last treatment was at home about 7:00 p.m. No wheezes were heard at her arrival. AW did have a cough. R. 298. The physical exam

showed that the lungs were clear, there was a good air exchange, and no wheezes were heard. The physical exam revealed no abnormal or positive findings. R. 299. The primary diagnosis was asthma exacerbated; medication was prescribed. R. 300. A chest x-ray was normal. R. 297. The results of the physical examination and the x-ray do not demonstrate an asthma attack as defined by Section 3.00C. There is no evidence of intensive treatment on May 17, 2005.

    3.    <u>June 14, 2005.</u>

AW was taken to Chabert for a check-up. The report was completed on the "Kidmed Pediatric Progress" form. R. 294. The physical assessment was normal. It was noted that AW's lungs were clear. She did not have a cold. She was to return in three weeks. The note is signed by a licensed practical nurse. Although the note refers to asthma attacks lasting longer and coughing at night, this is part of the history received from Ms. Smith. The note does not demonstrate that Ms. Smith went to Chabert as result of an attack which required physician intervention and occurred in spite of prescribed treatment. <u>See</u> Section 103.03B. Instead, the note demonstrates that it was for a check-up.

    4.    <u>October 1, 2005.</u>

At 12:35 p.m. Ms. Smith brought AW to the Chabert emergency room. She reported that AW had been coughing and vomiting. R. 288. During the physical examination AW was smiling and playful. R. 290. The lungs were noted as normal. R. 289. The primary diagnosis was upper respiratory infection with asthma as the secondary diagnosis. R. 290. The note does not demonstrate that AW's condition on October 1, 2005 met the requirement of an asthma attack under Section 3.00C.

    5.    <u>October 11, 2005.</u>

Ms. Smith brought AW to Chabert. Ms. Smith reported that the school said that AW had an asthma attack with increased coughing. The lungs were clear and there was no evidence of nasal discharge or lesions. The primary diagnosis was asthma. R. 284. Even though the note refers to an asthma attack at school, the symptoms for such an attack are not recorded in the physical assessment.    6.    November 2, 2005.

Ms. Smith brought AW to Chabert reporting coughing, vomiting and a runny nose. R. 282. There were decreased breath sounds. The diagnosis was asthma exacerbated and bronchitis. She was to return on November 30, 2005. R. 283. The report does not demonstrate evidence of intensive treatment as required by Section 3.00C.

    7.    November 18, 2005.

Ms. Smith brought AW to Chabert and reported an asthma flare-up at school. The physical assessment found drainage with tight coughing and wheezing. She was to return on November 22, 2005. The report does not demonstrate that the condition was of the severity described in Section 3.00C.

    8.    November 22, 2005.

This is the date that Ms. Smith was told to return to Chabert with AW. At that time it was noted that AW would be given the flu vaccine if her nasal passage was clear, but it was noted that her nasal passage was congested. She was scheduled to return on November 30, 2005. The report does not demonstrate that the conditions were of the severity described in Section 3.00C.

*   *   *

AW contends that the ALJ failed to explain why Listing 103.03B was not satisfied. She argues that she had numerous hospital visits for asthma in 2005 and was treated with the following

medications: Pulmicort; Xopene; Singulair; Orapred; Prelone and Lusonal. The foregoing review of the records relied upon by AW demonstrates that the severity of the attacks did not meet the Listing Requirements. Even if two or three of the reports could be construed as meeting the severity, requirements there were not enough of them to satisfy the frequency requirement for Listing 103.03B.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 14) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 11) be DENIED and plaintiff's complaint be dismissed with prejudice.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 23rd day of June, 2008.

**SALLY SHUSHAN**
**United States Magistrate Judge**